Filed 1/30/25  Wang v. Plaza Bonita CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| STEVEN WANG et al., | B321484 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 21STCV44289) |
| v. | |
| PLAZA BONITA, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and orders of the Superior Court of Los Angeles County, William F. Fahey, Judge. Judgment reversed in part and remanded; order on anti-SLAPP motion affirmed in part, reversed in part; order on demurrer affirmed in part, reversed in part and remanded; order on motion for attorneys' fees affirmed.

Mirch Law Firm, Kevin J. Mirch and Marie C. Mirch, for Plaintiffs and Appellants.

Blackmar, Principe & Schmelter, George B. Blackmar, Gerry C. Schmelter and Peter J. Attarian, Jr., for Defendants and Respondents.

Plaintiffs and appellants Steve Wang and Dinah Wang (collectively, appellants) appeal from the trial court's judgment of dismissal following defendants and respondents Plaza Bonita, LLC; Culver City Mall, LLC; Valencia Town Center Venture, LP; Jason Woods; and Jessica Scales's (collectively, respondents) successful special motion to strike pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP statute) and demurrer.[1] Appellants also appeal the court's order granting respondents' motion for attorneys' fees and costs.[2]

We conclude the complaint is partially based on protected activity. While the claims at issue in respondents' anti-SLAPP motion are mostly subject to the anti-SLAPP statute, the trial court struck some claims that fall outside the statute. As to the demurrer, leave to amend should be granted as to certain causes of action because appellants demonstrate they can be sufficiently amended. In addition, we conclude the court correctly granted the motion for attorneys' fees and costs.

---

[1] Despite not being a party to the motions, Unibail-Rodamco-Westfield (URW) is a respondent and a party to the appeal.

All undesignated statutory references are to the Code of Civil Procedure.

[2] This court granted appellants' motion to consolidate appeals, ordering appeal Nos. B323121 and B321484 consolidated into No. B321484.

## BACKGROUND

**Appellants' complaint**

### *The lease and Plaza Bonita's unlawful detainer actions*

Appellants are owners and operators of three separate Burger King restaurant franchises in National City, Culver City, and Valencia. Appellants entered into three separate leases with Plaza Bonita, Culver City Mall, and Valencia Town Center Venture, through amendments that replaced Shihlin Electric with appellants as lessees. Plaza Bonita brought two unlawful detainer actions against appellants, one in February and one in June 2021. In the second unlawful detainer suit, a writ of possession was executed preventing appellants from accessing their restaurant in National City. Plaza Bonita disposed of the personal property left on the premises. Both unlawful detainer actions were dismissed in September 2021. Plaza Bonita and Culver City Mall subsequently terminated their respective leases with appellants pursuant to terms in the lease amendments allowing terminations upon 60 days' notice.

### *Appellants' claims and allegations regarding the 60-day termination clause and the writ of possession*

In December 2021, appellants sued respondents, including URW.[3] Appellants asserted causes of action for breach of

---

[3]    The complaint alleges URW was a real estate investment trust that owned and managed Plaza Bonita, Culver City Mall, and Valencia Town Center Venture. Woods and Scales allegedly both worked for URW and negotiated the lease amendments that replaced Shihlin Electric with appellants as lessees.

URW filed a motion to quash that was never ruled upon below.

3

contract, breach of covenant of good faith and fair dealing, fraudulent inducement, negligent inducement, wrongful eviction, conversion, defamation, unfair business practices, and negligence. Appellants alleged they never agreed to the terms in the lease amendments allowing the defendant landlords to terminate the underlying leases upon 60 days' notice for any reason. Respondents allegedly added the termination provisions surreptitiously and concealed it from appellants. Appellants alleged Plaza Bonita attached a false five-day notice to quit to its unlawful detainer complaint that falsely contended appellants owed substantial amounts in past due rent.

Further, the complaint alleged Plaza Bonita unlawfully obtained a writ of possession by failing to serve the request for entry of default and default judgment until after appellants had been locked out of the premises. Appellants allegedly were prohibited from accessing their personal property in the restaurant, including operating cash, supplies, and furniture. Plaza Bonita allegedly converted the property by disbursing it without appellants' permission.

### *The fraudulent inducement and defamation allegations*

Appellants also alleged Woods and Scales, while acting individually and as agents for the other respondents, made a number of false statements to induce appellants to execute the lease amendments. Woods and Scales allegedly misrepresented respondents' intent to enter into long-term lease agreements with appellants that would justify their capital investment in the three leasehold estates. Appellants alleged Woods and Scales also misrepresented the lease agreements would be subject to the same terms and conditions as the original leases.

4

In addition, the complaint alleged URW, Plaza Bonita, Woods, and Scales defamed appellants by falsely telling their vendors, customers, and employees that appellants did not timely pay their rent and were therefore having their leases terminated. The aforesaid respondents also allegedly falsely stated appellants owed at least $45,929.63 to URW and Plaza Bonita. Appellants contend these statements were false because appellants were in compliance with their COVID-19 deferred rent agreement at the time. Moreover, appellants alleged Plaza Bonita obtained its writ of possession by false pretenses and provided false information to the sheriff to have appellants removed from their restaurant in National City.

**Procedural history**

### *The anti-SLAPP motion*

In February 2022, respondents filed an anti-SLAPP motion as to portions of the first and second causes of action and to the fifth through eighth causes of action of the complaint. Respondents argued appellants' claims were based on Plaza Bonita's unlawful detainer action, which was protected activity. Respondents asserted appellants could not show a probability of prevailing on these claims because they were subject to litigation privilege that protected Plaza Bonita's filing and prosecution of the unlawful detainer complaint.

In opposition, appellants argued the conduct was not protected activity because it fell within the illegality exception discussed in *Flatley v. Mauro* (2006) 39 Cal.4th 299 (the *Flatley* rule). Appellants maintained the unlawful detainer action was illegal due to the eviction moratorium in effect at the time. Appellants asserted the alleged conduct at issue was not limited to the prosecution of the unlawful detainer action. Appellants posited the litigation privilege did not apply for the same

5

reason—the alleged conduct was illegal under the eviction moratorium.

### *The demurrer*

Respondents concurrently demurred to the complaint, asserting among other grounds that it failed to state facts sufficient to constitute a cause of action under section 430.10, subdivision (e). Respondents asserted a variety of factors as to why the claims lacked sufficient facts, including inadequately pled elements, statute of limitations, and litigation privilege. In opposition, appellants maintained they sufficiently pled the requisite elements of their claims, adding statute of limitations and litigation privilege did not bar their causes of action due to the discovery rule and the *Flatley* rule respectively.

### *The ex parte application*

Appellants sought ex parte to continue the hearing on the anti-SLAPP motion and demurrer. While appellants submitted late oppositions, they requested more time to prepare revised oppositions. The trial court heard the ex parte application at the April 2022 hearing on the anti-SLAPP motion and demurrer. The court denied appellants' request to continue the hearing, allowed respondents to file reply briefs, and took the matters under submission to decide if it would consider the late oppositions and rule on the merits of the motions.

### *The trial court's rulings*

On April 18, 2022, the trial court issued an order granting the anti-SLAPP motion and sustaining the demurrer without leave to amend. The court ruled in respondents' favor on the ground the matters were not timely opposed. The court, however, also alternatively ruled on the matters' merits, finding the claims challenged by the anti-SLAPP motion arose from protected activity as they were premised on the unlawful detainer action.

The court rejected appellants' argument that respondents engaged in illegal conduct, and observed the eviction moratorium in the COVID-19 ordinance relied upon by appellants expired before the unlawful detainer action. The court then concluded appellants could not show the probable validity of their claims because they were subject to litigation privilege.

The trial court sustained the demurrer as to each cause of action, without leave to amend, finding appellants failed to plead the requisite elements of their claims. The court also concluded the statute of limitations barred appellants' fraud claims because they failed to sufficiently plead the discovery rule. The court denied leave to amend because appellants failed to proffer any new facts or legal theories to cure the defects.

### *The attorneys' fees proceedings*

In May 2022, the trial court entered judgment dismissing the complaint.[4] Respondents filed a motion for attorneys' fees and costs in June 2022. Attorneys' fees were sought pursuant to the attorneys' fees provisions in the leases and Civil Code section 1717. Attorneys' fees under section 425.16, subdivision (c)(1), were also sought for prevailing on the anti-SLAPP motion. In opposition, appellants argued Woods and Scales were not parties to any of the leases and none of the respondents actually incurred attorneys' fees in this case. Appellants also contended the requested attorneys' fees were excessive and unsupported.

The trial court granted the motion in its entirety, concluding respondents were entitled to their attorneys' fees on both of their theories of recovery. The court rejected appellants'

---

[4]     URW was not a party to the anti-SLAPP motion or the demurrer but was apparently mistakenly included in the judgment of dismissal.

7

argument that Woods and Scales were entitled to less fees because they were not parties to any lease, finding the fees could not be artificially divided among the tasks involved because the causes of action were all based on the same core nucleus of facts.

Appellants timely appealed the judgment of dismissal and the relevant orders as discussed below.

**CONTENTIONS ON APPEAL**

Appellants assert four main arguments. First, the alleged conduct at issue is not protected activity under the anti-SLAPP statute or barred by litigation privilege because it is illegal conduct that falls within the *Flatley* rule. Second, the anti-SLAPP motion challenges unprotected conduct beyond the filing of the unlawful detainer action. Third, they maintain the demurrer should not be sustained without leave to amend because their claims are sufficiently pled and any defects can be amended. Finally, the trial court erred in granting the motion for attorneys' fees and costs because respondents' billing records include fees not incurred or unrelated to the anti-SLAPP motion.

**DISCUSSION**

**I. The complaint alleges conduct that is protected activity under the anti-SLAPP statute**

**A. *Standard of review and applicable law***

"'"We review de novo a ruling on a special motion to strike under section 425.16. [Citation.] Thus, we apply our independent judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim."'" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671 (*Balla*).) "An appellant still bears the '"burden of affirmatively demonstrating error."'" (*Ibid*.)

8

In evaluating an anti-SLAPP motion, courts must conduct a two-step analysis. First, courts must decide whether a defendant has met its burden of establishing that the challenged allegations or claims arise from protected activity in which the defendant has engaged. (*Manlin v. Milner* (2022) 82 Cal.App.5th 1004, 1017–1018 (*Manlin*).) Protected activity includes (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. (§ 425.16, subd. (e).)

Second, if a defendant meets its burden on the threshold showing, the court decides if the plaintiff has established a probability that the plaintiff will prevail on the claim. (§ 425.16, subd. (b)(1); *Manlin, supra*, 82 Cal.App.5th at p. 1018.) To satisfy this burden, the plaintiff must demonstrate the complaint is both legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment. At the second step, the court's inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. (*Balla, supra*, 59 Cal.App.5th at p. 671.)

9

Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action arises from protected activity or has merit. Rather, courts should analyze each claim for relief to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion. (*Manlin, supra,* 82 Cal.App.5th at p. 1018.)

### B. *The allegations at issue in the first and second causes of action are based on protected activity*

Respondents challenged allegations in paragraphs 69f through 69h and 77a through 77c of the first and second causes of action.[5] These allegations indicate Plaza Bonita, through its agents Woods and Scales, breached its lease by filing a frivolous unlawful detainer action, containing a false five-day notice to quit, resulting in appellants being locked out of their restaurant and then converting appellants' personal property contained therein.[6] Appellants contend, at the time Plaza Bonita brought

---

[5] Respondents also challenged paragraphs 31 through 33 and 36 through 49 of the general allegations in the complaint. The trial court did not specifically address these allegations that contain facts relating to the alleged protected activity, but are also relevant background information. None of the general allegations specifically tie any particular claim to the acts alleged and thus are not necessarily subject to the anti-SLAPP statute. Accordingly, we conclude it is appropriate to leave these allegations intact.

[6] Appellants contend the alleged protected activity only apply to Plaza Bonita because the allegations at issue only involve Plaza Bonita's unlawful detainer action. However, the first cause of action bases the liability of Plaza Bonita, Culver City Mall, and Valencia Town Center Venture on the unlawful

10

its unlawful detainer actions in February and June 2021, Governor's Executive Order No. N-08-21 (June 11, 2021) already extended National City's eviction moratorium to September 30, 2021. Appellants argue the unlawful detainer suits therefore were illegal and not protected activity under the *Flatley* rule. We disagree.[7]

"In *Flatley v. Mauro* (2006) 39 Cal.4th 299 . . . , [our Supreme Court] held that 'section 425.16 cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition.'" (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 423.) "[The] conduct must be illegal *as a matter of law* to defeat a defendant's showing of protected activity. The defendant must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to defeat an anti-SLAPP motion at the first step." (*Id.* at p. 424.)

---

detainer action, without distinguishing between respondents. The allegations regarding Plaza Bonita's unlawful detainer in the second cause of action only apply to Plaza Bonita because they are specifically directed only to Plaza Bonita. The fifth and sixth causes of action are only asserted against Plaza Bonita. The seventh and eighth causes of action are asserted against Plaza Bonita and other respondents, but these claims do not distinguish between respondents as to the alleged liability.

[7] The trial court initially granted the anti-SLAPP motion and sustained the demurrer because they were untimely opposed. Appellants argue the court abused its discretion by rejecting their late oppositions and denying their ex parte application. However, the court ultimately considered the oppositions and ruled on the merits of the matters. Thus, we conclude this issue is moot.

11

If a plaintiff claims that the defendant's conduct is illegal and thus not protected activity, the plaintiff bears the burden of conclusively proving the illegal conduct. (*Cross v. Cooper* (2011) 197 Cal.App.4th 357, 385.) In meeting the initial burden, defendant need not show as a matter of law that his or her conduct was legal. (*Ibid.*)

On April 7, 2020, National City adopted a temporary moratorium, Urgency Ordinance No. 2020-2479, on evictions for nonpayment of rent in response to the COVID-19 pandemic. The eviction moratorium was extended through September 30, 2020, under National City Resolution No. 2020-144. In June 2021, Governor's Executive Order No. N-08-21 (June 11, 2021) was issued, providing for the expiration of portions of several previous COVID-19-related executive orders. Paragraph 61 of this order stated: "As applied to commercial evictions only, the timeframe for the protections set forth in Paragraph 2 of Executive Order N–28–20 (and extended by Paragraph 21 of Executive Order N–66–20, Paragraph 3 of Executive Order N–71–20, and Paragraph 2 of Executive Order N–80–20) is extended through September 30, 2021." Thus, the plain language of the order indicates the protections under paragraph 2 of the Governor's Executive Order No. N-28-20 (Mar. 16, 2020) were extended through September 30, 2021.

However, Governor's Executive Order No. N-28-20 (Mar. 16, 2020), paragraph 2, stated in relevant part: "Any provision of state law that would preempt or otherwise restrict a local government's exercise of its police power to impose substantive limitations on residential or commercial evictions as described in subparagraphs (i) and (ii) below—including, but not limited to, any such provision of Civil Code sections 1940 et seq. or 1954.25 et seq.—is hereby suspended to the extent that it

would preempt or otherwise restrict such exercise." There are no provisions in this order that extended National City's eviction moratorium past September 30, 2020, as appellants claim. The order only suspended any state law that would have preempted or otherwise restricted a local government's ability to limit residential or commercial evictions. Hence, the order merely authorized local governments to limit evictions; local governments still had to act on their own accord.

There is no evidence National City extended its eviction moratorium beyond September 30, 2020. The unlawful detainer suits here were all brought in 2021, well beyond the expiration date of the moratorium. The alleged unlawful detainer actions were then not illegal activities falling within the *Flatley* rule. Accordingly, the allegations in these claims involving the unlawful detainer suits and five-day notice to quit are based on protected activity within the anti-SLAPP statute. (See *Birkner v. Lam* (2007) 156 Cal.App.4th 275, 281 ["The prosecution of an unlawful detainer action indisputably is protected activity within the meaning of section 425.16."].)

Further at issue in these causes of action are the allegations Plaza Bonita breached its lease by causing appellants to be locked out of their restaurant and converting their personal property therein. We conclude these allegations also arise out of protected conduct because they involve litigation-related activity. "'The anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation. [Citation.] Indeed, courts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16."'" (*Alfaro v. Waterhouse Management Corp.* (2022) 82 Cal.App.5th 26, 33.)

13

"'[A]ny act' (§ 425.16, subd. (b)(1)) 'includes communicative conduct such as the filing, funding, and prosecution of a civil action. [Citation.] This includes qualifying acts committed by attorneys in representing clients in litigation.'" (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210 (*Finton*).)

The alleged lockout and conversion of property were part of prosecuting the unlawful detainer action as they were based on a writ of possession issued for Plaza Bonita that allowed the sheriff to remove appellants from the premises. In executing a writ of possession, landlords may have a levying officer remove a holdover occupant. (See § 715.020, subd. (c).) Further, landlords are permitted, within certain statutory parameters, to dispose of personal property remaining on the real property. (See § 715.030.) Hence, the alleged lockout and conversion of property were not separate from the unlawful detainer action as appellants claim. While appellants may challenge whether Plaza Bonita complied with statute in executing the writ of possession, the alleged conduct was nevertheless protected activity as it was part of prosecuting the action.

Appellants cite several cases where the anti-SLAPP motions were denied on the basis the alleged acts at issue were not protected activity because the acts were separate from the filing and prosecution of the unlawful detainer actions. (See *Ulkarim v. Westfield LLC* (2014) 227 Cal.App.4th 1266, 1279 (*Ulkarim*) [tenant's claims were not based on protected activity because they challenged landlord's decision to terminate the tenancy, not the service of a notice of termination or the filing of an unlawful detainer complaint]; *Oviedo vs. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 110 [tenant's claim did not arise from protected activity because it was based on

14

landlord raising rent in violation of the Rent Stabilization Ordinance, not the unlawful detainer action and prior communications]; *Clark v. Mazgani* (2009) 170 Cal.App.4th 1281, 1284, 1286–1287 [tenant's action did not arise out of protected activity because it was based on landlord's removal of property from the rental market in violation of rent control laws, not the filing or prosecution of an unlawful detainer action].) These cases are inapposite to the analysis here because appellants' claims are based on the filing or prosecution of the unlawful detainer action.[8]

**C.      *Appellants fail to establish a probability of prevailing in the first and second causes of action***

As to the second step of the anti-SLAPP analysis, respondents contend appellants cannot show a probability of prevailing in the first and second causes of action because they are barred by litigation privilege. We agree.

"The litigation privilege applies 'to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.'" (*Optional Capital, Inc. v. Akin Gump*

---

[8]      Appellants argue the first and second causes of action also includes conduct that was not part of the prosecution of the unlawful detainer action. Namely, appellants cite the allegations in paragraphs 69a through 69d, 76, and 77d, which involve the alteration and termination of the leases. However, the anti-SLAPP motion only challenged allegations in paragraphs 69f through 69h and 77a through 77c of the first and second causes of action. Thus, the portions of the claims appellants identify are beyond the scope of the anti-SLAPP motion.

15

*Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 116.) "A broad range of conduct has been determined by courts to be within the scope of the privilege, including activity preparatory to litigation." (*Finton, supra*, 238 Cal.App.4th at p. 212.) "This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.'" (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241.) "Any doubt about whether the privilege applies is resolved in favor of applying it." (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913.)

Here, the filing of the unlawful detainer complaint and attaching a notice to quit thereto are communicative acts that fall squarely within litigation privilege. These actions unquestionably initiated the judicial proceedings and were essential to achieving the objects of the litigation. Appellants assert the same argument discussed above regarding the *Flatley* rule against the application of litigation privilege here. As discussed above, the evidence does not show Plaza Bonita brought an unlawful detainer action while an eviction moratorium was in effect.

As to the alleged lockout and conversion of property, appellants have not presented any evidence demonstrating Plaza Bonita breached the lease by performing acts to enforce the writ of possession. Appellants identify no clause or provision of the lease that prohibited Plaza Bonita from seeking and enforcing a writ of possession after obtaining a judgment in its favor. Accordingly, appellants fail to show a probability of prevailing on these claims.

**D.** *The fifth cause of action is based on protected activity, on which appellants fail to establish a probability of prevailing*

The fifth cause of action for wrongful commercial eviction is based on the same allegations at issue in the first and second causes of action discussed above. Appellants allege Plaza Bonita wrongfully evicted them by filing a frivolous unlawful detainer action, attaching a false five-day notice to quit to the unlawful detainer complaint, locking appellants out of their restaurant, and converting their personal property therein. As discussed previously, these acts are protected because they are litigation-related activities to prosecute the unlawful detainer action. The evidence does not show the conduct is illegal within the *Flatley* rule. For this same reason, appellants fail to show litigation privilege does not apply to the allegations regarding the unlawful detainer complaint.

Further, appellants present no evidence demonstrating Plaza Bonita wrongfully executed the writ of possession. There is no evidence Plaza Bonita failed to comply with a statutory obligation in removing appellants from the premises and disposing their personal property. Appellants point out the complaint states Plaza Bonita's motivation in terminating the lease, alleging Plaza Bonita independently agreed to lease the premises to other parties at higher lease payments. Appellants assert this motivation is not a communication that is subject to litigation privilege. We, however, "'examine the *principal thrust or gravamen* of a plaintiff's cause of action to determine whether the anti-SLAPP statute applies' and whether the trial court correctly ruled on the anti-SLAPP motion." (*Hylton v. Frank E. Rogozienski, Inc.* (2009) 177 Cal.App.4th 1264, 1272.) Here, the alleged motivation to terminate the lease is only incidental to the

17

claim; the underlying injury-producing conduct involves litigation-related activity.

**E.** ***The sixth cause of action is based on protected activity, on which appellants fail to establish a probability of prevailing***

The sixth cause of action for conversion is based on the abovementioned allegations that Plaza Bonita locked appellants out of their restaurant and converted their personal property therein in executing a writ of possession. More specifically, appellants allege Plaza Bonita converted their personal property by serving a writ of possession, having the sheriff remove them from the premises, and disbursing their Burger King food and beverages to others. Again, this alleged conduct was protected because Plaza Bonita was enforcing its writ of possession and prosecuting its unlawful detainer action. Appellants therefore must demonstrate a probability of prevailing on this claim.

Appellants do not identify any evidence that Plaza Bonita failed to comply with the law in disposing the personal property when it executed the writ of possession. Appellants only assert Plaza Bonita's conduct violated its statutory obligation to allow appellants to retrieve their property under Civil Code section 1993.03. However, this statute is not alleged in the complaint and was never raised in the underlying proceedings, which subjects the argument to forfeiture. (See *People v. Mayham* (2013) 212 Cal.App.4th 847, 856 ["A party may not raise an argument on appeal that he or she did not raise before the trial court."].) Appellants also fail to demonstrate how any of their evidence establishes a violation of the statute. Accordingly, appellants fail to meet their burden of proof.

18

**F.** *The seventh cause of action contains protected and unprotected activity*

The seventh cause of action for defamation/business disparagement is based on allegations in paragraphs 148 through 151 that Plaza Bonita, Woods, and Scales falsely communicated to others appellants did not timely pay their rent, owed at least $45,929.63 to Plaza Bonita, and were having their leases terminated due to the untimely payment of rent. Appellants also allege various other conduct in paragraphs 152 through 153, including obtaining a writ of possession by false pretenses, providing false information to the sheriff to remove appellants from the premises, and disposing of appellants' food supply in front of the general public.

Respondents contend the alleged false statements concerning the untimely rent and amount owed to Plaza Bonita were made in prosecuting the unlawful detainer action. However, the complaint does not allege these statements were made during the course of the unlawful detainer proceedings. The complaint only alleges these statements were made from May through November 2021 to appellants' employees, vendors, and customers. It cannot be inferred from the allegations that the alleged statements were only made to prosecute the unlawful detainer suit. Respondents present no evidence these statements were only made in connection with the prosecution of the unlawful detainer action. Accordingly, we conclude the conduct alleged in paragraphs 148 through 151 should not be stricken because it does not arise from protected activity.

Respondents also argue the trial court correctly struck the entire cause of action in granting the anti-SLAPP motion because the gravamen of the claim is based on the protected activity of prosecuting the unlawful detainer action. However, "'courts

19

should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected . . . .'" (*Manlin*, *supra*, 82 Cal.App.5th at p. 1018.) "'[T]o the extent any acts are unprotected, the claims based on those acts will survive.'" (*Ibid*.) "Restricting anti-SLAPP motions to indivisible 'causes of action' as determined by primary right theory would be inconsistent with the Legislature's use of the term 'special motion to strike.'" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394.) Thus, conduct that is unprotected should not be stricken merely because it is pled alongside allegations of protected activity under a single cause of action.

The conduct alleged in paragraphs 152 through 153, however, is based on protected activity. These allegations include obtaining the writ of possession, the lockout and removal of appellants from the premises, and the disposal of appellants' personal property therein. As discussed above, such allegations are based on protected activity because they involve enforcing the writ of possession and prosecuting the unlawful detainer action. Appellants fail to show they have a probability of prevailing on these allegations of the claim. Hence, the allegations in paragraphs 152 through 153 should be stricken.

G. *The eighth cause of action contains protected and unprotected activity*

The eighth cause of action for unfair business practices is based on two core injury-producing actions: (1) two unlawful detainer actions filed by Plaza Bonita (in paragraphs 168a through 168c) and (2) respondents altering and terminating the leases (in paragraphs 168d through 169). The allegations regarding the unlawful detainer suits are based on protected activity for the same reasons discussed earlier. Both of these

20

unlawful detainer actions were filed in 2021. Appellants fail to show the alleged conduct was illegal within the *Flatley* rule because the eviction moratorium was no longer in place when Plaza Bonita filed these actions. Thus, the allegations in paragraphs 168a through 168c should be stricken.

However, the allegations in paragraphs 168d through 169 concerning respondents altering and terminating the leases do not arise from protected activity. As discussed in *Ulkarim*, *supra*, 227 Cal.App.4th at page 1279, termination of the lease in itself is not protected activity. Further, the alleged alteration of the leases to include 60-day termination provisions are acts separate and apart from the unlawful detainer action. There are no other allegations or evidence demonstrating these acts were litigation-related activities.

## II. Appellants show a reasonable possibility they can amend some causes of action to withstand demurrer

### A. *Standard of review and applicable law*

"On review from an order sustaining a demurrer, 'we examine the complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory, such facts being assumed true for this purpose.'" (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) "We may also consider matters that have been judicially noticed." (*Ibid.*)

"A demurrer tests the legal sufficiency of the challenged pleading." (*Brown v. Los Angeles Unified School Dist.* (2021) 60 Cal.App.5th 1092, 1103.) "We accept as true all material facts properly pleaded in the complaint, but do not assume the truth of contentions, deductions, or conclusions of fact and law." (*Ibid.*) "The question of a plaintiff's ability to prove the allegations, or the possible difficulty in making such proof, does not concern the

reviewing court and plaintiffs need only plead facts showing that they may be entitled to some relief." (*Ibid*.)

"When a demurrer is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 670.) "If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) "[T]he plaintiff has the burden of demonstrating that 'there is a reasonable possibility the plaintiff could cure the defect with an amendment.'" (*Foundation for Taxpayer & Consumer Rights v. Nextel Communications, Inc.* (2006) 143 Cal.App.4th 131, 135.)

**B.** ***There is a reasonable possibility appellants can sufficiently amend the first cause of action***

The remaining unstricken allegations of the first cause of action for breach of written contract maintain Plaza Bonita, Culver City Mall, and Valencia Town Center Venture altered the leases to add a 60-day termination clause without appellants' knowledge and consent. Appellants allege they never agreed to such terms and that respondents concealed these added contract provisions.

""'A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach[,] and damage to plaintiff resulting therefrom.'"" (*Munoz v. MacMillan* (2011) 195 Cal.App.4th 648, 655.) "A written contract may be pleaded either by its terms—set out verbatim in the complaint or a copy of the contract attached to the complaint and incorporated therein by reference—or by its legal effect. [Citation.] In order to plead a contract by its legal

22

effect, plaintiff must 'allege the substance of its relevant terms. This is more difficult, for it requires a careful analysis of the instrument, comprehensiveness in statement, and avoidance of legal conclusions.'" (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1489.)

The trial court correctly sustained the demurrer to the first cause of action. The complaint fails to include appellants' leases with Culver City Mall and Valencia Town Center Venture and does not otherwise identify the terms of the leases that were breached. However, appellants show there is a reasonable possibility they can sufficiently amend the first cause of action.[9] Appellants assert they can attach the leases with Culver City Mall and Valencia Town Center Venture. Appellants assert they can amend this claim to allege Plaza Bonita, Culver City Mall, and Valencia Town Center Venture overcharged for common area operating costs they did not incur in violation of section 8.03 of the leases. Section 8.03, subdivision (a), of the lease with Plaza Bonita specifies the tenant shall pay the landlord the "Common Area Charge" as a contribution for all costs and expenses the landlord paid or incurred for maintaining the common areas. Appellants maintain the leases with Culver City Mall and Valencia Town Center Venture contain the same clause involving common area charges. Hence, appellants present sufficient facts

---

[9]     Appellants offered the trial court little or no facts to support their request for leave to amend. However, a plaintiff ""'can make [a showing how he or she can amend the complaint] in the first instance to the appellate court.'"" (*The Oglio Entertainment Group, Inc. v. The Hartford Casualty Ins. Co.* (2011) 200 Cal.App.4th 573, 585.)

23

demonstrating respondents breached a relevant clause in the leases by charging more than they were owed in expenses.

In addition, appellants assert they can allege Plaza Bonita and Culver City Mall breached sections 1.02 and 27.02 of the leases by terminating their leases before the terms expired. Appellants maintain they can allege Plaza Bonita and Culver City Mall did not have a legitimate basis to terminate early because the 60-day termination clause they acted under was invalid as it was added without each party's valid signature.

We conclude the abovementioned proposed facts further show appellants can sufficiently amend this cause of action. While section 27.02 of the leases is not a basis for liability, it is the leases' integration clause providing: "No alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by each party." Thus, appellants' proposed facts show the 60-day termination clause is nonbinding under section 27.02 because it was allegedly added without appellants' signed approval. Section 1.02 establishes the periods of the leases and indicates they end on the parties' designated dates, unless terminated sooner in accordance with the leases. Hence, this clause prohibited respondents from terminating before the terms expired without valid grounds under the leases. Given these proposed facts, appellants show they can state a cause of action by alleging Plaza Bonita and Culver City Mall improperly ended their leases early in violation of section 1.02 since the termination clauses they invoked were invalid under section 27.02.

**C.** ***There is no reasonable possibility appellants can sufficiently amend the second cause of action***

The remaining unstricken allegations of the second cause of action for breach of covenant of good faith and fair dealing contain the same facts as in the first cause of action regarding respondents improperly adding a 60-day termination clause without appellants' knowledge and consent. Appellants' proposed amendment to the first cause of action is based on these same aforementioned allegations. Appellants argue this cause of action is not duplicative because it includes allegations the parties had a special relationship that required disclosure and appellants' reasonable reliance. We disagree.

"If the allegations [in an action based on breach of implied covenant of good faith and fair dealing] do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." (*Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1395.)

The second cause of action alleges, "The parties had a special relationship that required reliance and proper disclosure of the allegations contained herein." However, the claim fails to specify why the parties' relationship constituted a special relationship. Appellants provide no explanation or legal authority demonstrating such a special relationship existed between the parties and why such allegations are appropriate for this claim. Appellants also fail to otherwise show how this cause of action is not a mere restatement of their contract claim. Accordingly,

appellants do not show a reasonable possibility they can sufficiently amend this cause of action.

**D.** ***There is a reasonable possibility appellants can sufficiently amend the third and fourth causes of action***

The third and fourth causes of action for fraudulent and negligent inducement involve allegations that respondents misrepresented to appellants they could replace Shihlin Electric as long-term lessees on three leases on the same term and conditions as the original leases. Respondents allegedly made these misrepresentations to induce appellants to execute the lease amendments, pay additional deposits, and make substantial capital improvements to the three leasehold estates. While the trial court properly sustained the demurrer, appellants show a reasonable possibility they can sufficiently amend these causes of action.

"Fraud in the inducement . . . occurs when '"the promisor knows what he is signing but his consent is *induced* by fraud, mutual assent is present and a contract is formed, which, by reason of the fraud is *voidable*."'" (*Rosenthal v. Great Western Fin. Securities Corp*. (1996) 14 Cal.4th 394, 415.) In California, fraud, including negligent misrepresentation, must be pled with specificity. (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 184.) "The particularity requirement demands that a plaintiff plead facts which ""show how, when, where, to whom, and by what means the representations were tendered."'" (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1469 (*Cansino*).)

"An action for relief on the grounds of fraud or mistake must be commenced within three years. However, such action is not deemed accrued 'until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.'" (*Kline v. Turner*

26

(2001) 87 Cal.App.4th 1369, 1373–1374.) "[T]o overcome an apparent limitations bar, the plaintiff claiming delayed discovery of the facts constituting the cause of action has the burden of setting forth pleaded facts to show "'(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer.'"'" (*Czajkowski v. Haskell & White, LLP* (2012) 208 Cal.App.4th 166, 175.)

The trial court did not err in sustaining the demurrer to these causes of action. The complaint alleges respondents made the misrepresentations starting in May 2017. Appellants allege they relied on the misrepresentations by signing the lease amendments, paying additional lease deposits, and making capital improvements to the leasehold estates. Appellants commenced their lawsuit beyond the three-year limitations on December 3, 2021. Thus, appellants must rely on the delayed discovery rule to avoid the statute of limitations bar. But the complaint has no allegations that appellants only later discovered the alleged fraud. Appellants allege no facts demonstrating they could not have discovered the fraud earlier despite reasonable diligence.

However, appellants do show a reasonable possibility they can sufficiently amend these causes of action. Appellants indicate they can allege they did not discover the fraud of the altered leases until they received notice from respondents that they were exercising the 60-day termination clause. Appellants aver Culver City Mall and Plaza Bonita each sent termination letters in October 2021 and December 2021 respectively. Appellants assert they can allege they were not aware and did not suspect the altered amendments because respondents had concealed them.

27

These proposed allegations show the time and manner of appellants' discovery of the alleged fraud and their inability to have made earlier discovery despite reasonable diligence. Hence, appellants meet their burden of demonstrating they can sufficiently amend these causes of action.[10]

### E. *The demurrer to the fifth and sixth causes of action is moot*

We concluded above the trial court did not err in granting the anti-SLAPP motion as to the fifth and sixth causes of action. The demurrer to these causes of action is therefore moot.

### F. *The seventh cause of action is adequately pled*

The trial court found the demurrer moot as to the seventh cause of action for defamation/business disparagement because this claim was entirely stricken under the order on the anti-SLAPP motion. As we concluded earlier this cause of action is only partially based on protected activity, we now consider if the remaining portions of this cause of action survive respondents' demurrer.

---

[10] The trial court also found these causes of action were not pled with the requisite specificity for fraud. We disagree. Appellants allege Woods and Scales made the false statements while acting individually and as agents for Plaza Bonita, Culver City Mall, and Valencia Town Center Venture. These allegations show who made the alleged misrepresentations and in what capacity they made them. (See *Cansino, supra*, 224 Cal.App.4th at p. 1469.) Further, Woods and Scales allegedly made the misrepresentations from May 2017 through December 2017 to Steven Wang by telephone calls and e-mails made and received in California and URW's business offices. These facts show how, when, where, by what means, and to whom the alleged misrepresentations were made. (*Ibid.*)

The unstricken allegations of this cause of action involve false, disparaging statements respondents allegedly made about appellants and their businesses. Respondents argue here and in their demurrer that this cause of action is barred by litigation privilege. As discussed above, however, nothing in the complaint suggests these alleged defamatory statements were necessarily made in connection with the prosecution of the unlawful detainer action. Appellants do not allege the statements were made during the course of or in preparation for the litigation. Further, the alleged statements were made to third parties—appellants' employees, vendors, and customers—who are not necessarily participants in a litigation. Accordingly, it cannot be inferred the alleged statements were communications made in connection with the legal proceedings. We therefore conclude the outstanding portions of the seventh cause of action are sufficient to overcome respondents' demurrer.

G. ***Appellants fail to show a reasonable possibility they can sufficiently amend the eighth cause of action***

The unstricken portions of the eighth cause of action for unfair business practices contain allegations respondents altered and terminated the leases. The complaint alleges respondents' conduct was unlawful and violated public policy. Appellants contend this cause of action is sufficiently pled because it alleges respondents engaged in unlawful conduct by altering the lease documents to add the termination provision. We disagree.

Business and Professions Code section 17200 states in relevant part: "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." "A UCL [(Unfair Competition Law)] action '"to redress an unlawful

29

business practice 'borrows' violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under [Business and Professions Code] section 17200 et seq. and subject to the distinct remedies provided thereunder."'" (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 677.) "A plaintiff alleging unfair business practices under these statutes must state with reasonable particularity the facts supporting the statutory elements of the violation." (*Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619.)

"While the scope of conduct covered by the UCL is broad, its remedies are limited." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144.) "We have stated that under the UCL, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'" (*Ibid.*)

The complaint alleges the alteration of the leases to add termination clauses was unlawful and violated public policy. However, the allegations identify no specific statutory provision, or the elements thereof, violated by respondents. The complaint only broadly alleges respondents' conduct "offend[ed] the established public policy underlying various federal, state and local municipal codes, mandates, statutes, rules, regulations, executive orders and/or ordinances." Appellants present no facts demonstrating respondents' alteration of the leases by adding the termination clauses violated a specific statute and its elements.

In addition, appellants maintain they adequately pled their remedy for this cause of action because the claim seeks injunctive relief to prevent the termination of the leases. However, "injunctive relief lies only to prevent threatened injury and has no application to wrongs that have been completed." (*Scripps Health v. Marin* (1999) 72 Cal.App.4th 324, 332.) "It should

30

neither serve as punishment for past acts, nor be exercised in the absence of any evidence establishing the reasonable probability the acts will be repeated in the future." (*Ibid.*)

Here, the complaint alleges Plaza Bonita and Culver City Mall terminated their leases. Appellants fail to show how injunctive relief has any application given the alleged wrongful conduct has already been completed. The other remedy alleged for this cause of action is damages, which cannot be recovered for UCL claims. (See *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 312 ["'A UCL action is equitable in nature; damages cannot be recovered.'"].) Appellants' only other possible remedy is restitution, but they offer no facts to support such relief. Accordingly, appellants do not demonstrate they can sufficiently amend this cause of action.

### H. *Appellants fail to show a reasonable possibility they can sufficiently amend the ninth cause of action*

The ninth cause of action for negligence alleges a variety of duties that appear to be merely a summary of the wrongful conduct previously pled in the complaint. The duties alleged under this cause of action include not filing an unlawful detainer action unless rent was due, not altering leases to add termination clauses without consent, and returning appellants' personal property after a court deemed the writ of possession unlawfully obtained. As appellants fail to show respondents had a general duty of care as to any of the conduct alleged for this claim, we conclude the trial court did not err in sustaining the demurrer to this cause of action.

Appellants contend they can amend this cause of action to allege Plaza Bonita improperly disposed of their personal property in violation of Civil Code section 1993.03. Appellants

31

assert this section sets forth a landlord's duties and procedures as to a tenant's personal property left on the premises after eviction and maintain, by basing Plaza Bonita's duty on a statutory standard, they can plead the elements of negligence per se.

The doctrine of negligence per se creates a presumption of negligence if it is established (1) the defendant violated a statute or regulation; (2) the violation proximately caused an injury; (3) the injury resulted from an occurrence the statute or regulation was designed to prevent; and (4) the person injured was in the class of persons for whose protection the statute or regulation was adopted. (*Spates v. Dameron Hospital Assn.* (2003) 114 Cal.App.4th 208, 218.) Here, appellants identify as a basis for a negligence claim a statute designed to protect a tenant's property left on the premises after the tenant vacated. However, the underlying facts appellants present to support their proposed amendment involve the same aforementioned protected activity concerning the writ of possession. As discussed previously, Plaza Bonita's disposal of the property in executing the writ of possession is protected activity subject to the anti-SLAPP statute. Appellants do not establish they have a probability of prevailing on these allegations. Given the proposed amendment here would be stricken by the same anti-SLAPP analysis, appellants fail to show they can amend the complaint to state a valid cause of action.

III. **The trial court correctly awarded respondents attorneys' fees and costs**

A. *Standard of review and applicable law*

"The ordinary standard of review for a motion for attorney's fees is abuse of discretion." (*Edna Valley Watch v. County of San Luis Obispo* (2011) 197 Cal.App.4th 1312, 1317.) ""An abuse of

discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice."'" (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 378.) "But a 'determination of whether the criteria for an award of attorney fees and costs have been met is a question of law.'" (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169.)

"As a general rule, the prevailing party may recover certain statutory costs incurred in the litigation up to and including entry of judgment. [Citations.] These costs may include attorney fees, if authorized by contract, statute . . . or law. [Citation.] [A]ttorney fees require a separate noticed motion." (*Lucky United Properties Investment, Inc. v. Lee* (2010) 185 Cal.App.4th 125, 137.) In determining what fees are reasonable, California courts apply the "lodestar" approach. (See, e.g., *Holguin v. DISH Network LLC* (2014) 229 Cal.App.4th 1310, 1332.) This inquiry "begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.) From there, "[t]he lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*Ibid.*)

Respondents moved to recover their attorneys' fees under section 425.16, subdivision (c) of the anti-SLAPP statute and Civil Code section 1717. "Section 425.16, subdivision (c) provides that 'a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.'" (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 486.) "The fee-shifting provision was apparently intended to discourage such strategic lawsuits against public participation by imposing the

litigation costs on the party seeking to 'chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.'" (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131.) "As will appear, by its terms, Code of Civil Procedure section 425.16 permits the use of the so-called lodestar adjustment method under our long-standing precedents . . . ." (*Ibid*.)

As to Civil Code section 1717, it "governs awards of attorney fees based on a contract and authorizes an award of attorney fees '[i]n any action on a contract' to 'the party prevailing on the contract' if the contract provides for an award of attorney fees." (*Frog Creek Partners, LLC v. Vance Brown, Inc.* (2012) 206 Cal.App.4th 515, 523.) "'[T]he party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract.'" (*Id*. at pp. 523–524.) "The determination of which party prevailed in an action on a contract is within the discretion of the trial court." (*Id*. at p. 524.)

B. ***Respondents are entitled to recover attorneys' fees***

Respondents sought $57,681.25 in attorneys' fees pursuant to the anti-SLAPP statute, section 425.16, subdivision (c), and the reciprocal contractual attorneys' fee statute, Civil Code section 1717. Appellants contend respondents are not entitled to recover attorneys' fees because none were actually incurred. Appellants assert the only entity that incurred attorneys' fees was "Westfield Plaza Bonita," who was not a party to the proceedings. We disagree.

While it appears the billing records were directed only to a client named "Westfield Plaza Bonita," respondents submitted a declaration clarifying this name refers to the shopping center owned by Plaza Bonita. The declaration also indicated all three of

the landlord entities—Plaza Bonita, Culver City Mall, and Valencia Town Center Venture—incurred and paid the legal fees for this matter. The trial court was within its discretion to accept the declaration and find it met respondents' burden of proof.

Woods and Scales were not mentioned in the declaration, but they were represented in the anti-SLAPP motion by the same counsel as the other respondents. "[T]he commonly understood definition of attorney fees applies with equal force to section 425.16 and a prevailing defendant is entitled to recover attorney fees if represented by counsel." (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 524.) A defendant who successfully brings an anti-SLAPP motion may recover attorneys' fees even if those fees were paid by someone else. (See *Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 675 ["Appellant cites no authority, and we have found none, that a defendant who successfully brings an anti-SLAPP motion is barred from recovering fees if the fees were paid by a third party."].) In deciding the attorneys' fees motion, the trial court found the amount of fees incurred could not be apportioned to each defendant individually because the claims in this case were all based on the same core nucleus of facts. The court found defense counsel's tasks could not be compartmentalized because the common facts between the claims required counsel to oppose the entirety of appellants' case.

"Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units." (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687.) "Such fees need not be apportioned when incurred for representation on an issue common to both

causes of action in which fees are proper and those in which they are not." (*Ibid*.)

We conclude the trial court did not abuse its discretion by granting the attorneys' fees motion in its entirety rather than attempting to apportion the fees among the respondents. The nine causes of action all contained allegations relating to the alteration of the leases to add a 60-day termination clause, respondents exercising the added termination clause to terminate the leases, the prior unlawful detainer actions, and the lockout and disposal of appellants' personal property in executing the writ of possession. While each cause of action has some variation, the abovementioned facts are largely shared among all of the claims. It is reasonable to find the claims for relief are so intertwined that it would be impracticable to apportion the attorneys' fees among the respondents based on the tasks involved.

### C. *The trial court did not abuse its discretion by not reducing the amount of attorneys' fees requested*

#### 1. *Reducing fees for the demurrer*

In addition, appellants argue the attorneys' fees should be reduced because Woods and Scales cannot recover any fees for the demurrer under Civil Code section 1717 as they were not a party to any of the leases and no contract claims were asserted against them.[11]

---

[11] Appellants also maintain the billing records include fees for the motion to quash filed by URW. Respondents submitted a declaration indicating they were not seeking the attorneys' fees incurred for URW's motion to quash. Thus, it was reasonable for

Although the billing records include work done for the demurrer, the trial court did not abuse its discretion by deciding not to apportion the fees among the respondents based on the tasks involved. As discussed above, each of the nine causes of action largely share the same core allegations. It is reasonable for the court to find it impracticable to allocate fees when the issues and facts in the demurrer and anti-SLAPP motion overlapped considerably. It was within the court's discretion to decide that apportionment of fees based on tasks involved was not appropriate due to the claims being substantially intertwined.

  **2.**   *Reducing fees due to the partial success of the anti-SLAPP motion*

Appellants also assert the attorneys' fees award should be reversed if any part of the anti-SLAPP motion is reversed. We disagree. "The fees awarded to a defendant who was only partially successful on an anti-SLAPP motion should be commensurate with the extent to which the motion changed the nature and character of the lawsuit in a practical way." (*Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 345.)

Here, respondents' anti-SLAPP motion was almost entirely successful. We partially reversed the motion as to only modest portions of two causes of action. Appellants were unsuccessful in reversing the motion on an entire cause of action. The motion completely struck two causes of action and substantial portions of four causes of action in the case. The motion fully eliminated the allegations many claims relied upon relating to the prior unlawful detainer actions and writ of possession. The motion succeeded in considerably narrowing the issues in the case.

---

the trial court to accept the declaration and not find respondents were improperly seeking such fees.

37

Accordingly, the motion extensively changed the nature and character of the lawsuit in a practical way. Our reversal of the motion as to modest portions of two claims, one of which did not survive demurrer, does not necessarily justify a reduction of attorneys' fees. Given the motion's substantial success and impact on the case, we conclude the trial court's award of attorneys' fees in the full amount requested is reasonable and fairly compensates respondents for the results achieved.

## DISPOSITION

The May 13, 2022 judgment of dismissal is reversed and remanded. The order on the anti-SLAPP motion as to the first, second, fifth, and sixth causes of action is affirmed. The order on the anti-SLAPP motion as to the seventh cause of action is affirmed in part and reversed in part—paragraphs 152 through 153 shall be stricken and the order as to the remaining paragraphs shall be reversed. The order on the anti-SLAPP motion as to the eighth cause of action is affirmed in part and reversed in part—paragraphs 168a through 168c shall be stricken and the order as to the remaining paragraphs shall be reversed. The order on the anti-SLAPP motion as to paragraphs 31 through 33 and 36 through 49 is reversed.

The order on the demurrer to the second, fifth, sixth, eighth, and ninth causes of action is affirmed. The order on the demurrer to the seventh cause of action is reversed. The order sustaining the demurrer to the first, third, and fourth causes of action is affirmed, but the denial of leave to amend as to these causes of action is reversed. On remand, the trial court is directed to grant appellants leave to amend as to the first, third, and fourth causes of action consistent with this opinion.

The trial court is also directed to address URW's motion to quash on remand.

The order on the motion for attorneys' fees and costs is affirmed.

Each side is to bear their own costs on appeal.


                                        CHAVEZ, J.

We concur:


ASHMANN-GERST, P. J.


RICHARDSON, J.